361 P.2d 734

KERR–McGEE OIL INDUSTRIES, INC., Appellant,

v.

**W. J. McCRAY, Appellee.**

No. 6735.

Supreme Court of Arizona.

May 10, 1961.

M. V. Gibbons, St. Johns, Kerr, Conn & Davis, Oklahoma City, Okla., and Gust, Rosenfeld, Divelbess & Robinette, Phoenix, for appellant.

Earl Platt, St. Johns, for appellee.

STRUCKMEYER, Chief Justice.

This is an action by W. J. McCray, hereinafter referred to as appellee, against the Kerr-McGee Oil Industries, Inc., Apache Oil and Helium Corporation and another. From a verdict and judgment in favor of appellee and an order declaring a lien, Kerr-McGee Oil Industries, Inc. brings this appeal.

On July 9, 1955 appellee and the Apache Oil and Helium Corporation entered into an oral contract whereby appellee was to furnish a well drilling rig, fully manned for the purpose of drilling a well or wells at locations to be chosen by the Apache Oil and Helium Corporation. Appellee moved his rig to a location chosen and operated it until March 31, 1956, at which time the Apache Oil and Helium Corporation requested the rig to be shut down. It was further requested that the rig be not moved from the location and that it "stand-by", available for further service. Appellee kept his rig at the well location until September 8, 1956 at which time Kerr-McGee Oil Industries, Inc. acquired an interest in the property.

On September 9, 1956 appellee commenced drilling operations at the same location under a contract with appellant. Thereafter on December 4, 1956 appellee filed a claim for lien against the land upon which the well was located and subsequently brought this action alleging that both the Apache Oil and Helium Corporation and appellant, Kerr-McGee Oil Industries, Inc. claimed some interest in the well property. Appellee asserted a balance due from the Apache Oil and Helium Corporation of $3,311.09 for work done prior to April 1, 1956 and further claimed an amount in the sum of $5,500 for stand-by time between April 1, 1956 and September 8, 1956. Judgment was entered in favor of appellee on both items and a lien was declared for the amount of $8,811.09.

Appellee here claims certain procedural irregularities in an effort to defeat the appeal. First, that under Rule 75(a) of the Arizona Rules of Civil Procedure, 16 A.R. S., an appellant must in the designation of contents of record on appeal designate a transcript of the record or it may not be considered on appeal. Appellant's designation does not include a specific reference to the transcript. It does provide:

"Notice Is Hereby Given, That Kerr-McGee Oil Industries, Inc., one of the Defendants hereinabove named and Appellant herein, deems the entire record in this matter, as necessary to present the questions involved on appeal to the Supreme Court of the State of Arizona, as follows:"

\* \* \* \* \* \*

(Here follows an itemization of the papers desired. The transcript of testimony was not specified.)

Appellant argues that the requirements of Rule 75(a) were actually, if not technically, met and that no one was misled by its designation. The relevant portion of Rule 75(a) is:

"* * * Every document and other object filed in an action shall constitute a part of the record thereof. Within ten days after an appeal to the supreme court is perfected, the appellant shall serve upon the appellee and file with the superior court a designation of the portions of the record, proceedings, and evidence to be contained in the record on appeal * * *."

We observe that the Federal Rules of Civil Procedure, from which our rules were derived, governing the preparation of the record on appeal should be liberally construed to promote justice and relieve against undue hardship. Hall v. Gordon, 74 App.D.C. 24, 119 F.2d 463. The very purpose of the rules is to obviate delays and to administer speedy justice. Pinkerton v. Pritchard, 71 Ariz. 117, 223 P.2d 933, and they should be construed in a reasonable manner to effectuate this purpose. Collins v. Superior Court, 48 Ariz. 381, 62 P.2d 131; De Camp v. Central Arizona L. & P. Co., 47 Ariz. 517, 57 P.2d 311.

The introductory paragraph of appellant's designation of contents of record informed appellee that the entire record was deemed necessary to a final determina-tion. By Rule 75(b) in order that the transcript become part of the record on appeal, it must be filed in the superior court. In the instant case the transcript was timely filed. Hence by Rule 75(a) upon such filing it became a part of the record in the case. We do not approve of the practice of designating the entire record without specification of portion of the record desired. The rules obviously contemplate a designation with particularity. However, without a showing of prejudice, which there is not, we will not require a more literal compliance in this case.

Second, appellee urges that he was not given proper notice that a reporter's transcript had been filed. Here again we find no prejudicial error. Appellee acknowledges that he was actually aware of the filing of the transcript and from the briefs it is apparent that appellee is thoroughly familiar with its contents.

Third, appellee urges that at the trial appellant did not prove an interest in the land upon which the well was drilled; that as a consequence appellant has no standing to appeal to this Court. The short answer to this is that in appellee's amended complaint the allegation was made that appellant claimed some right, title or interest in the property against which it was sought to impose the lien. Appellant in its answer admitted that it had an interest in the premises. No citation of author-

ity is needed for the proposition that facts admitted in the pleadings will be accepted as true both here and in the court below.

As grounds for its appeal appellant asserts that under the Arizona lien statutes a person furnishing labor or machinery is not entitled to claim a lien for time spent "standing by". The answers to the questions raised depend on the interpretation to be given to A.R.S. § 33–981, subd. A. It provides:

> "Every person who labors or furnishes materials, machinery, fixtures or tools in the construction, alteration or repair of any building, or other structure or improvement whatever, shall have a lien thereon for the work or labor done or materials, machinery, fixtures or tools furnished, * * *" (emphasis supplied).

The Arizona Lien Statutes are remedial and to be liberally construed. Leeson v. Bartol, 55 Ariz. 160, 99 P.2d 485. Their purpose is that laborers and materialmen *enhancing the value* of another's property should be protected.

In Independent Meat Co. of Jerome v. Crane Co., 21 Ariz. 1, 7, 184 P. 992, 994 we held that in order for a materialman to claim and enforce a mechanic's lien against the owner for machinery furnished:

> "* * * the fact must appear that the machinery * * * furnished became a part of the construction, erection, or completion of the improvement. * * *"

The machinery must become a necessary instrumentality in accomplishing the work. Here the machinery was not part of the completion of the improvement while it was on "stand-by" status. While it was undoubtedly intended to be available for use and therefore of some value to the owner of the premises still it does not appear to have obtained the status required by the statute in order to fix a priority for payment by a charge against the property.

This Court has passed on section 33–981 in the somewhat analogous case of Hulsey v. La Mance, 73 Ariz. 430, 242 P.2d 554, 556. There the lien claimant, La Mance, was the drill superintendent. After operations had been suspended he continued to stand by with the drilling machinery and also ran errands, watched over the rig and acted as a general handyman on the premises. The Court denied a lien upon the theory that La Mance's services were of a personal nature, saying:

> "* * * There was no construction, alteration or repair of any structure. One is not entitled to a lien for what appears to be purely personal services, nor for purely professional services. * * *"

Appellee argues that La Mance is distinguishable on the basis that the lien claimant there did not personally own the rig nor any tools used on the job. It is urged that if La Mance had been the owner he would have thereby qualified under the Statute. However, § 33–981, subd. A, does not distinguish between one who furnishes machinery and one who furnishes machinery as an owner. It merely says every person who "labors *or* furnishes materials, * * * fixtures or tools * * *." (Emphasis supplied). In La Mance the lien claimant furnished labor; in the instant case the appellee furnished machinery. Appellee's distinction is one without a difference.

In Blake v. Crystaline Lime Co., 37 Idaho 637, 221 P. 1100, 1101, a lien was claimed by laborers for time spent on the job but for which no actual work was performed. In rejecting their claim for liens, the Idaho Court said:

" * * * The very foundation of a lien claim under our statute is the performance of labor upon or the furnishing of materials for the construction or improvement of the property upon which the lien is claimed. The theory upon which a lien is given as a prior claim upon the property is that the party claiming the lien has, either by his labor or by the materials furnished, contributed to the construction or improvement of the property upon which the lien is claimed."

While the lien statutes are to be liberally construed to effect their purpose, here the "stand-by" machinery did not contribute to the improvement of the property and hence was not within the manifest purpose of the statute. The claim for a lien in the sum of $5,500 should not have been allowed.

Appellant further urges that appellee's right to claim any lien at all expired prior to his perfecting his claim by filing in the office of the county recorder. The procedure for perfecting a lien is found in A.R.S. § 33–993 which provides in its applicable part:

"In order to impress and secure the lien provided for in this article, every original contractor, within ninety days, and every other person * * * within sixty days after the completion of a building, structure or improvement, or any alteration or repair thereof, shall * * * file one copy with the county recorder * * *."

It is not disputed that appellee is an original contractor. The question is when did the ninety day period commence to run. Appellant argues that it commenced on March 31, 1956, the last day that labor or machinery was provided by appellee other than in a stand-by capacity and relies upon the case of Albert Steinfeld & Co. v. Al

lison Min. Co., 41 Ariz. 340, 18 P.2d 267, involving a lien for materials furnished in the improvement of a mining claim. There this Court held that it was necessary for a claim for lien to be filed within ninety days after the claimant furnished the last item of the materials for which the lien was claimed. It was pointed out that mining is a continuous operation which often extends indefinitely in the future; that to protect the owner of such properties, there must be a time when the lienholder's right to file ceases.

We note that § 33–993 contains the language "after the completion of the structure or improvement". No reference is made to the date a lien claimant last performed work and labor. Only the *date of completion* is mentioned. At least one of our prior decisions is of assistance in determining the meaning of the statute. Arizona Eastern R. R. Co. v. Globe Hardware Co., 14 Ariz. 397, 129 P. 1104, 1105 dealt with a paragraph 2898, Revised Statutes of 1901 the predecessor to § 33–994. In speaking of the sixty day limitation for filing, the court said:

"* * * In other words, we hold that the persons dealing with the original contractor may perfect their demands into a lien against the property of the owner at any time after they have ceased to labor or furnish material, whether the original contractor

has completed the structure or not, providing it is done not later than sixty days after the completion of the structure. * * *"

Similarly see: Raymond v. Agren, 44 Ariz. 327, 36 P.2d 797 and Gillespie Land & Irr. Co. v. Hamilton, 43 Ariz. 102, 29 P.2d 158.

In attempting to determine when the work was completed, we have examined the transcript of evidence. It discloses that one A. T. House, Sr. was agent for the Apache Oil and Helium Corporation and that when the actual drilling ceased he requested appellee to keep his rig on the property on a "stand-by" basis thus indicating that it would be later used. He testified:

"A. Practically every time I called Mr. McCray I told him 'I am still trying to hustle some money, but not having any luck, but keep your chin up and I will treat you right.'

"Q. You say that you told him to stand by?

"A. I told him to keep his chin up and stand by and I would treat him right and have the money for him."

From this evidence we believe the trial judge was justified in drawing the conclusion that the well drilling contract was not terminated on March 31, 1956 when the rig was actually shut down but continued

**314**

during the time McCray was on a "standby" basis.

 While the record does not reflect any testimony as to the actual date of termination it is plain that when the Apache Oil and Helium Corporation sold its interest in the property to the appellant, Kerr-McGee Oil Industries, Inc., the contract then came to an end as Apache Oil and Helium Corporation would not thereafter expect further performance. So far as both appellee and the Apache Oil and Helium Corporation were concerned there was nothing further to be performed even though the well had not been completed. That date was September 8, 1956. To the parties to the contract, the structure was completed.

We hold that appellee had ninety days from September 8, 1956, in which to file his notice and claim of lien. The notice and claim were filed on December 4, within the ninety day limitation and therefore were timely filed. Appellee's services and machinery were used in the improvement and enhanced the value of the property. The judgment declaring a lien in the sum of $3,311.09 was properly entered and the judgment of the lower court is affirmed to that extent only.

Judgment as modified, affirmed.

BERNSTEIN, V. C. J., and UDALL, JENNINGS and LOCKWOOD, JJ., concur.