120 Ariz. 79 (1978)
584 P.2d 60
UNITED STATES FIDELITY AND GUARANTY CO., a Maryland Corporation, Appellant,
v.
ARIZONA STATE CARPENTERS HEALTH AND WELFARE TRUST FUND, a Trust, Arizona State Carpenters Pension Trust Fund, a Trust, Arizona State Carpenters Vacation Savings Trust Fund, a Trust, and Carpenters Joint Apprentice Program, a Trust, Appellees.
No. 1 CA-CIV 3159.
Court of Appeals of Arizona, Division 1, Department B.
June 13, 1978.
Rehearing Denied July 10, 1978.
Review Denied September 7, 1978.
Moore & Romley by Robert A. Scheffing, Phoenix, for appellant.
Minne & Sorenson by Richard Minne, Phoenix, for appellees.
OPINION
JACOBSON, Judge.
The primary issue on appeal is whether a trust fund administered by a union representing a contractor's employees may recover on the contractor's license bond for contributions *80 owed to the fund by the contractor.
The appellant, United States Fidelity and Guaranty Co. (USF&G), is the surety on a bond issued for Walmart Enterprises, Inc. (Walmart). Walmart was engaged in the construction business and was a signatory to master labor agreements between certain Arizona contractors' associations and individual employers and certain Arizona local unions and craft councils. Under these agreements, Walmart was obligated to pay specified sums per hour for each hour worked by each of its covered employees to the appellees, Arizona State Carpenters Health and Welfare Trust Fund; Arizona State Carpenters Pension Trust Fund; and Arizona State Carpenters Vacation Savings Trust Fund.
Walmart's contractual responsibilities to the Health and Welfare Trust and the Pension Trust were to report the hours worked by individual employees and to make monthly contributions based upon the total number of hours worked by all covered employees. The Health and Welfare Trust uses such contributions to purchase insurance for employees and the Pension Trust administers a deferred compensation plan for employees. When reports are made, trustees of both funds credit the individual employees with time in their hour banks whether or not the employer makes the actual contribution.
The Vacation Savings Trust differs from the other two appellees in that it was to receive funds which had been withheld by Walmart from employee wages after taxes. Monies received are deposited into individual vacation savings accounts with payment to individual employees on an annual basis. Any money over and above administrative costs is distributed to the employees as dividends.
The appellees brought an action against Walmart and USF&G for contributions which Walmart had reported but never paid into the trusts. The trial court found that USF&G was liable under its bond in an amount of $500.00 up to and including June 30, 1973 and thereafter under the increased liability of the bond for $529.70 to the Health and Welfare Trust; $749.70 to the Pension Trust; and $276.25 to the Vacation Savings Trust.
The contractor's license bond had been executed by USF&G pursuant to A.R.S. § 32-1152 which provides in part:
"(D) ... The bond or deposit shall be subject to claims ... by any person furnishing labor ... used in the direct performance of a construction contract."
The resolution of this matter depends on whether the union trust funds fall within the class of persons entitled to recover for the furnishing of labor. We find that they do.
A.R.S. § 32-1152(D) is similar to the Miller Act, 40 U.S.C. § 270a., et. seq. (1970), which requires contractors with the federal government to furnish performance bonds in favor of the United States for the protection of laborers and materialmen. Every person who is unpaid for labor furnished in the "... prosecution of the work provided for in such contract ..." may sue on the bond.[1] In United States ex rel. Sherman v. Carter, 353 U.S. 210, 77 S.Ct. 793, 1 L.Ed.2d 776 (1957), the United States Supreme Court held that trustees of a fringe benefit trust fund were proper claimants under a Miller Act performance bond. The contractor was a member of an association of employers which had signed master labor agreements with several unions involved in the construction industry whereby the contractor was obligated to pay the trustees of a health and welfare fund a specified sum for each hour worked by his employees. The contractor failed to make the required payments, and the union trust fund sought recovery against the surety. The court found that such contributions were part of the consideration which the contractor agreed to pay for the services of labor and that these contributions were part of the compensation owed to the employees. The court analogized the *81 relationship between the employees and the trust as that of an assignor and assignee, and concluded that the trustees were entitled to enforce the rights of those employees.
"The master labor agreements not only created Carter's obligation to make the specified contributions, but simultaneously created the right of the trustees to collect those contributions on behalf of the employees.... The trustees are claiming recovery for the sole benefit of the beneficiaries of the fund, and those beneficiaries are the very ones who have performed the labor." 353 U.S. at 220, 77 S.Ct. at 798, 1 L.Ed.2d at 784.
State courts which have considered the rights of union trust funds to recover against contractors' performance bonds executed pursuant to state statutes have followed the analysis in Carter and have found the trustees proper parties to recover against such bonds. See Bernard v. Indem. Ins. Co. of North America, 162 Cal. App.2d 479, 329 P.2d 57 (1958); Genix Supply Co. v. Bd. of Trustees, 84 Nev. 246, 438 P.2d 816 (1968); Martin v. William Casey & Sons, 5 A.D.2d 185, 170 N.Y.S.2d 228 (1958), aff'd 8 N.Y.2d 728, 201 N.Y.S.2d 104, 167 N.E.2d 646 (1960); Pipeline Indus. Benefit Fund v. Aetna Cas. and Sur. Ins. Co., 503 P.2d 1286 (Okl.App. 1972); Crabtree v. Lewis, 86 Wash.2d 282, 544 P.2d 10 (1975).
The facts of the instant case are virtually identical in their significant aspects to those of Carter. However, USF&G has correctly pointed out that a performance bond was at issue in Carter whereas the bond involved in this appeal is a contractor's licensing bond. We do not find that this distinction makes the court's reasoning in Carter less persuasive.[2] A prime purpose of the Miller Act performance bond is to protect persons supplying labor and material. See United States ex rel. Sherman v. Carter, supra; Fleisher Engineering & Constr. Co. v. United States ex rel. Hallenbeck, 311 U.S. 15, 61 S.Ct. 81, 85 L.Ed. 12 (1940). Likewise, the Arizona courts have held that A.R.S. § 32-1152 is intended to protect laborers and materialmen. See Rhodes v. Hirsch, 5 Ariz. App. 583, 429 P.2d 470 (1967); Continental Cas. Co. v. Grabe Brick Co., 1 Ariz. App. 214, 401 P.2d 168 (1965).
The appellees are seeking to recover on behalf of employees, compensation owed to those employees as a direct result of labor performed on a construction contract. In J.H. Welsh & Son Contracting Co. v. Arizona State Tax Commission, 4 Ariz. App. 398, 420 P.2d 970 (1966), this court recognized that certain fringe benefit contributions of an employer are payment for labor and thus permissible exemptions for purposes of the state transaction privilege tax. We find that the fringe benefits involved in this case are likewise a cost of labor. The money which Walmart is obligated to pay to the Health and Welfare Trust Fund and the Pension Trust is directly dependent on the number of hours worked by its employees. The amount of money owed the Vacation Savings Trust was to have been withheld from the employees' wages by Walmart and is likewise a direct labor cost. Allowing the trusts to seek recovery for these labor costs on behalf of the laborers furthers the protective function of A.R.S. § 32-1152.
USF&G also argues that in order for the appellees to assert a valid claim against the bond, it would require this court to find that the union trusts would be entitled to assert a statutory mechanic's and materialmen's lien against the owner of the property where the construction occurred. Appellant cites Arizona Gunite Builders, Inc. v. Continental Cas. Co., 105 Ariz. 99, 102, 459 P.2d 724, 726 (1969) in which the Arizona Supreme Court held that A.R.S. § 32-1152 was intended "... to encompass all the enumerated persons in § 33-981(A).[3]" *82 Appellant construes this to mean that only those persons enumerated in § 33-981(A) may recover under § 32-1152. In our opinion, Arizona Gunite Builders, Inc., supra, need not be construed so broadly. Therefore, we do not find it necessary to reach the issue of whether the union trust funds could assert a lien against the owner of the property.
Judgment affirmed.
EUBANK, P.J., and OGG, J., concurring.
NOTES
[1] 40 U.S.C. § 270b.(a) (1970).
[2] The Arizona Supreme Court has utilized the federal courts' decisions in cases involving Miller Act performance bonds to interpret A.R.S. § 32-1152 licensing bonds. See Arizona Gunite Builders, Inc. v. Continental Cas. Co., 105 Ariz. 99, 102, 459 P.2d 724, 727 (1969).
[3] A.R.S. § 33-981 provides in part:

"A.... every person who labors or furnishes materials ... in the construction, alteration or repair of any building, or other structure or improvement whatever, shall