659 P.2d 1299

**BROWN WHOLESALE ELECTRIC COMPANY, a California corporation, Plaintiff-Appellee,**

v.

**SAFECO INSURANCE COMPANY OF AMERICA, a corporation, Defendant-Appellant.**

**No. 1 CA–CIV 6331.**

Court of Appeals of Arizona, Division 1, Department B.

Nov. 12, 1982.

Rehearing Denied Dec. 29, 1982.

Review Denied Feb. 1, 1983.

Corbet & Eagleburger, Ltd. by G. Gregory Eagleburger, Phoenix, for defendant-appellant.

Strong & Pugh, P.A. by William K. Strong, Phoenix, for plaintiff-appellee.

## OPINION

FROEB, Presiding Judge.

This suit is the result of a sale of electrical materials and supplies by appellee, Brown Wholesale Electric Company, to Rocky Mountain Electric, Inc. (RME) during 1980 and 1981 for which appellee was not paid. RME was the electrical contractor on a construction project in Phoenix, Arizona (hereafter referred to as the McKesson Drug Project) for which Case Construction Company, Inc. (Case) was the general contractor. Safeco Insurance Company of America, appellant, was the surety on Case's license bond. Appellant appeals from the granting of appellee's motion for summary judgment holding appellant liable on the bond in the amount of $11,175.93 for unpaid materials furnished by appellee to RME used on the McKesson Drug Project.

Appellee filed suit on February 25, 1981, naming appellant, RME, Case, and other contractors and their respective license bond sureties, seeking recovery of $62,-971.03 on open account from RME.[1] The complaint alleged a balance due appellee of $1,931.93 for electrical materials and supplies furnished RME by appellee which were used on the McKesson Drug Project. Case had a $15,000 license bond as required by A.R.S. § 32–1152 issued by appellant as surety to cover unpaid claims of suppliers and materialmen on the McKesson Drug Project. Appellee later amended its complaint claiming an amount due on the McKesson Drug Project of $11,175.93.

Appellant and Case filed a joint answer denying the allegations of the complaint and, in addition, raised four affirmative defenses: (1) failure to state a claim; (2) statute of frauds; (3) failure to give notice as required by A.R.S. §§ 33–981—1006; and (4) limitation of liability of $4,000.[2]

Appellee filed its motion for summary judgment against appellant on July 23, 1981.[3]

Appellee's motion was supported by the affidavit of James Hofmann, general manager of RME, which established that appellee had supplied electrical materials and supplies to RME which RME used on the McKesson Drug Project. Appellee also submitted an affidavit by its credit manager, Kathy Robrecht, to establish appellee's prices on the materials furnished RME and to confirm which invoices remained unpaid.

In its response to appellee's motion for summary judgment, appellant contended, generally, that the evidence presented was speculative and conclusory and based upon inadmissible hearsay. Attached to the response was an affidavit by Darryl Wareing, vice-president of Case, stating only that Case did not receive any notice from appellee regarding its claim for reimbursement. In addition, appellant and Case filed a cross-motion for summary judgment against appellee alleging that no notice had been given Case as required by A.R.S. §§ 33–981—1006, and that therefore appellant could not be held liable as surety on its principal's license bond.[4]

Appellant raises three issues on appeal:

(1) Were the affidavits in support of appellee's motion for summary judgment sufficient to establish a prima facie case

---

1. This appeal involves only appellee's claim against appellant for unreimbursed materials and supplies furnished RME which were used on the McKesson Drug Project.

2. Affirmative defenses (1), (2), and (4) have not been raised on appeal and we will not consider their merits.

3. We note that A.R.S. § 32–1152(E) requires a supplier of materials seeking to recover against a contractor's license bond to maintain an action at law against the contractor *and* the surety. Appellee proceeded against the surety only in its motion for summary judgment. While appellant raised this defect in the trial court, it was not raised on appeal, and we will not consider it.

4. On appeal, appellee concedes it could not have sought recovery under the mechanics' and materialmen's lien statute, A.R.S. §§ 33–981—1006, since it did not notify the general contractor, Case, of the fact that it had supplied materials and supplies on the McKesson Drug Project. *See* A.R.S. § 33–992.01. For that reason, appellee sought to recover on Case's license bond pursuant to A.R.S. § 32–1152 which does not contain a notice provision.

for appellee's entitlement to summary judgment?

(2) Did the trial court err in granting appellee's motion for summary judgment because inconsistencies between Hofmann's affidavit and his deposition showed the existence of issues of material fact?

(3) Must a third party seeking to recover on a contractor's license bond pursuant to A.R.S. § 32–1152 first satisfy the prerequisites for filing a claim under Arizona's Mechanics' and Materialmen's Lien Statute, A.R.S. §§ 33–981—1006, including the twenty-day notice provision found in A.R.S. § 33–992.01?

## SUFFICIENCY OF THE AFFIDAVITS

Appellant cites three deficiencies in the affidavits in support of appellee's motion which raise issues of material fact under A.R.S. § 32–1152. They are: (1) Did appellee furnish materials to RME? (2) Were these materials used in the direct performance of RME's construction contract with Case on the McKesson Drug Project? (3) Was appellee paid by RME?

Appellee argues its affidavits set forth a prima facie case for summary judgment in its favor which was not rebutted with competent evidence by appellant. We agree.

■ We are mindful of the rule that in reviewing the granting of a motion for summary judgment, we must view the evidence in the light most favorable to the party against whom the motion was granted and give such party the benefit of all favorable inferences that may reasonably be drawn therefrom. *Livingston v. Citizen's Utility, Inc.,* 107 Ariz. 62, 481 P.2d 855 (1971); *Taylor v. Mueller,* 24 Ariz.App. 403, 539 P.2d 517 (1975). As the moving party, appellee had the initial burden of showing there were no issues as to any material fact and that it was entitled to judgment as a matter of law. *Lopez v. Arizona Water Company, Inc.,* 23 Ariz.App. 99, 530 P.2d 1132 (1975); *Hay v. Duskin,* 9 Ariz.App. 599, 455 P.2d 281 (1969).

■ The Hofmann affidavit, based upon personal knowledge and a review of itemized invoices sent to RME, established, first, that appellee sold materials and supplies to RME, and, second, that these materials were used by RME on the McKesson Drug Project. When he could determine the job on which they were probably used, he noted the job on the invoice. To allocate the materials to the various jobs indicated, Hofmann relied on the nature and quantity of the materials required for the various jobs RME had under way during the period it was buying materials from appellee, on the fact that some of the materials were used only on one job, and, in some instances, on information in RME's purchase orders, many of which he had written. He also reviewed RME purchase orders and discussed the jobs with the owner of RME to refresh his recollection. Finally, he considered the nature and quantity of electrical materials RME was obtaining from other sources during the period RME was buying supplies and materials from appellee. Attached to his affidavit is a copy of invoices on which he was able to determine where the materials were used by RME. Robrecht's affidavit determined sales prices for the items shown on each invoice which Hofmann had allocated to the McKesson Drug Project. Robrecht's affidavit also established the balance of $11,175.93 owed appellee.

We find appellee made out a prima facie case that (1) it sold materials and supplies to RME; (2) that RME used the materials and supplies specified by Hofmann on the McKesson Drug Project; (3) that the evidence sets forth an attempt to allocate which of these materials and supplies were applicable strictly to the McKesson Drug Project; and (4) that RME had not paid for materials and supplies in the amount of $11,175.93 used on the McKesson Drug Project. Once appellee made this showing, the burden then shifted to appellant to produce competent evidence that a material issue of fact existed. *National Housing Industries, Inc. v. E.L. Jones Development Co.,* 118 Ariz. 374, 576 P.2d 1374 (App.1978).

**158**

■ Appellant failed to produce any competent evidence to rebut the allegations set forth by appellee. Appellant's response was limited to general statements alleging the above-referenced affidavits were speculative, conclusory, and based upon inadmissible hearsay. There were no controverting affidavits. They were therefore insufficient to rebut appellee's prima facie case. A party cannot defeat a motion for summary judgment based solely on the unsupported contention that a dispute exists; it has the burden of showing that competent evidence is available to justify a trial. *Sewell v. Brookbank,* 119 Ariz. 422, 581 P.2d 267 (App.1978); *Byars v. Arizona Public Service Co.,* 24 Ariz.App. 420, 539 P.2d 534 (1975). Appellant failed to meet this burden.

### INCONSISTENCIES BETWEEN HOFMANN'S AFFIDAVIT AND DEPOSITION

■ For its second argument, appellant argues that there were inconsistencies between the testimony given by Hofmann at his deposition and his affidavit used to support appellee's motion for summary judgment. We find it unnecessary to reach this issue, however, since the content of the deposition was not presented to the trial court to raise a genuine issue of material fact. Matters not presented to the trial court cannot for the first time be raised on appeal. *J.H. Mulrein Plumbing Supply Co. v. Walsh,* 26 Ariz. 152, 222 P. 1046 (1924); *Cote v. A.J. Bayless Markets, Inc.,* 128 Ariz. 438, 626 P.2d 602 (App.1981).

■ Appellant argues it was prejudiced because it was not aware of Hofmann's deposition since it never received notice and did not attend the taking of the deposition. We do not find appellant's argument per-suasive. Hofmann's deposition was taken prior to either Case's or appellant's answer and without Case's or appellant's knowledge, but it was nevertheless properly taken under the rules of civil procedure without notice to either.[5] Appellant undertook no discovery. Since appellee's motion for summary judgment was based entirely upon the affidavits of Hofmann and Robrecht, appellant could have deposed those witnesses itself or obtained further affidavits. In fact, at one point appellant noticed the deposition of Hofmann but did not proceed with it. Appellant's failure to controvert the facts raised in appellee's motion cannot be excused by its lack of knowledge of the Hofmann deposition.

### NOTICE

■ Appellant's third argument raises a question of first impression in this state: whether a materials supplier seeking recovery on a general contractor's license bond under A.R.S. § 32–1152 must give notice of its claim as required for mechanics' and materialmen's lien claimants under A.R.S. §§ 33–981—33–1006. We agree with the trial court that appellee was not required to give prior notice to the general contractor before seeking recovery under the contractor's license bond and hold that the notice provision of A.R.S. § 33–992.01 was not intended by the legislature to apply to the remedy provided under A.R.S. § 32–1152.

■ Arizona lien statutes are remedial and are to be liberally construed. *Kerr-McGee Oil Industries, Inc. v. McCray,* 89 Ariz. 307, 311, 361 P.2d 734, 736 (1961). The primary purpose of A.R.S. § 32–1152 is to protect laborers and materialmen. *Continental Casualty Co. v. Grabe Brick Co.,* 1 Ariz.App. 214, 216, 401 P.2d 168, 170 (1965). It is also true of both A.R.S. § 32–1152 and

---

5. Rule 30(a), Rules of Civil Procedure, provides:

After commencement of the action, any party may take the testimony of any person, including a party, by deposition upon oral examination. Leave of court, granted with or without notice, must be obtained only if the plaintiff seeks to take a deposition prior to the expiration of 30 days after service of the summons and complaint upon any defendant . . . .

Safeco was served on February 26, 1981, and Hofmann's deposition was not noticed until March 30, 1981, in excess of thirty days of service on appellant. Therefore, even though appellant did not answer until March 31, 1981, the notice of Hofmann's deposition was proper.

A.R.S. §§ 33–981—1006 that payment by the contractor to a subcontractor does not relieve the contractor from liability to a party who has sold goods to a subcontractor. *L.M. White Contracting Co. v. St. Joseph Structural Steel Co.*, 15 Ariz.App. 260, 265, 488 P.2d 196, 201 (1971). In this case, appellee had two potential avenues to recover payment for the materials it supplied RME used on the McKesson Drug Project. These were: (1) the filing of a mechanics' and materialmen's lien pursuant to A.R.S. §§ 33–981—1006; and (2) the filing of a claim against the contractor's license bond pursuant to A.R.S. § 32–1152. Election of one remedy would not preclude recourse under the other. *United States Fidelity and Guaranty Co. v. Hirsch*, 94 Ariz. 331, 385 P.2d 211 (1963).

Appellee concedes that it chose to bring suit under A.R.S. § 32–1152 for the reason that it was precluded from filing a lien under A.R.S. §§ 33–981–1006, having failed to give the requisite notice required by A.R.S. § 33–992.01. Appellant does not contest appellee's right to elect its remedy, but contends suit is barred under A.R.S. § 32–1152 where appellee failed to comply with the notice provision of A.R.S. § 33–992.01, arguing that the latter must be read into A.R.S. § 32–1152. We disagree.

In interpreting the scope of the license bond statute, this court must ascertain the intent of the legislature. In *Arizona Gunite Builders, Inc. v. Continental Casualty Co.*, 105 Ariz. 99, 459 P.2d 724 (1969), the court explained the direct relationship between A.R.S. § 32–1152 and A.R.S. §§ 33–981—1006, concluding that:

> [T]o properly construe § 32–1152 it must be read in light of, and harmonized with the Mechanics' and Materialmen's Lien Law, §§ 33–981 et seq.
>
> *  *  *  *  *  *
>
> It is a rule of construction that statutes *in pari materia* must be read and construed together and that all parts of the law on the same subject must be given effect, if possible.

105 Ariz. at 101, 459 P.2d at 726 (quoting from *Home Owners' Loan Corp. v. City of Phoenix*, 51 Ariz. 455, 77 P.2d 818 (1938)). The court held that all the persons enumerated in A.R.S. § 33–981(A) were intended by the legislature to be encompassed within the term "any person furnishing labor or materials" found in A.R.S. § 32–1152. This result was necessary if both acts, which are *in pari materia*, were to be harmonized.

The next case relied upon by appellant is *B.J. Cecil Trucking, Inc. v. Tiffany Construction Co.*, 123 Ariz. 31, 597 P.2d 184 (App.1979), which involved a suit by a supplier of hauling services against a contractor and its surety for services rendered to a subcontractor. The contractor successfully argued that the legislature had not intended to give a right of action under A.R.S. § 32–1152 to any supplier of labor and materials beyond those who would be proper mechanics' lien claimants with respect to a private contract under A.R.S. § 33–981. The court stated:

> [B]y enacting A.R.S. § 32–1152 in its present form, the legislature intended to grant a right of action against the contractor's licensing bond to three groups of claimants:
>
> 1.  The Registrar of Contractors;
>
> 2.  persons in direct contractual relationship with the licensed contractor who are damaged by that contractor's failure to perform; and
>
> 3.  persons who would be proper mechanics lien claimants under A.R.S. § 33–981 in respect to a private construction contract and persons who would be proper claimants under A.R.S. § 34–222(A)(2) in respect to a public construction project.
>
> Considering the statute in perspective, we are unable to find within it any indication of an intent to expand the contractor's and bondsman's liability beyond the well-established limits of the mechanics lien law and the public construction payment bond statute.

123 Ariz. at 34, 597 P.2d at 187.

In 1979, before the sale of any materials in the present case, A.R.S. § 33–981 was amended to require that a supplier give

notice to the owner of the property and the general contractor in order to claim a mechanics' and materialmen's lien. Subsection D, which was added to A.R.S. § 33–981, states:

A person required to give preliminary twenty day notice pursuant to § 33–992.-01 is entitled to enforce the lien rights provided for in this section only if he has given such notice and has made proof of service pursuant to § 33–992.02.

A.R.S. § 33–992.01(B), as amended in 1979, requires that a supplier to a subcontractor must:

[A]s a necessary prerequisite to the validity of any claim of lien, serve the owner or reputed owner, the original contractor or reputed contractor and the construction lender, if any, or reputed construction lender, if any, with a written preliminary twenty day notice as prescribed by this section.[6]

Appellant argues that in order to be a "proper mechanics' lien claimant," appellee was required to give written preliminary notice to Case of the materials it supplied to the job site and their approximate value within twenty days of the date they were first furnished. Since this was not done, appellee could not claim a valid mechanics' lien and thus could not be a proper claimant against appellant's surety bond.

We find appellant's interpretation of our opinion in *B.J. Cecil Trucking* to be without merit. It is clear that only a portion of A.R.S. § 33–981 was read *in pari materia* with A.R.S. § 32–1152. The decision was limited to who were "proper parties" to bring suit under A.R.S. § 32–1152. *B.J. Cecil Trucking* cannot be interpreted as implying that the notice provisions of one statute must be read into the other.[7] We have found nothing in the legislative histo-

ry of the respective statutes, nor are we referred to any case, which supports appellant's position. On the contrary, had the legislature intended to add a notice provision to A.R.S. § 32–1152, it could have easily done so when that statute was amended in 1980. In amending A.R.S. § 32–1152 in 1980 and 1981, following the addition of a notice provision to A.R.S. § 33–981 in 1979, the legislature apparently did not believe it necessary to require a notice provision for license bond claimants. Where, as here, the words of the statute are plain and unambiguous, we need not go outside the language of the statute itself for interpretation. *Ernst v. Collins,* 81 Ariz. 178, 302 P.2d 941 (1956).

The judgment of the trial court is affirmed.

GRANT and GREER, JJ., concur.

---

**6.** A.R.S. § 33–992.01(C) provides that the notice shall be given not later than twenty days after the claimant has first furnished labor, materials, machinery, fixtures or tools to the job site.

**7.** We note that at the time A.R.S. § 33–981 was amended to add its notice provision, A.R.S. § 34–222 contained a different notice provi-

sion, requiring notice to be given within ninety days from the date on which such claimant last performed the labor or furnished or supplied the last of the material for which such claim is made. *See* A.R.S. § 34–223. If these three statutes are to be read together, as appellant claims, a claimant would be faced with two differing notice provisions.