158 Ariz. 83 (1988)
761 P.2d 157
UNITED SERVICES AUTOMOBILE ASSOCIATION, Plaintiff/Appellee,
v.
Stephen B. PARRY and Margaret E. Scherr, individually and as guardian and next friend of Matthew Parry, a minor, Intervenors/Appellants.
No. 2 CA-CV 88-0127.
Court of Appeals of Arizona, Division 2, Department B.
April 26, 1988.
Review Denied October 4, 1988.[*]
Slutes, Sakrison, Even, Grant & Pelander, P.C., by David E. Hill, Tucson, for plaintiff/appellee.
*84 Lewis & Schatz by David K. Schatz and M. Wayne Lewis, Chandler, for intervenors/appellants.

OPINION
ROLL, Judge.
Intervenors/Appellants Steven B. Parry, Margaret E. Scherr, and Matthew Parry appeal from the trial court's granting of summary judgment in favor of United Services Automobile Association (USAA). USAA had filed an action seeking a declaratory judgment that a homeowners policy issued by USAA did not obligate that company to pay damages in connection with injuries sustained by Matthew Parry while he was operating a go-cart owned by the insured. For the reasons set forth below, we affirm.
FACTS
In November of 1984, USAA issued a homeowners policy to Roger and Margaret Jones in connection with the Jones residence in Chandler, Arizona. The residence was situated on lot 66 of Heatherbrook Development. Approximately eight months later, the Jones family purchased a five horsepower go-cart for recreational use. Shortly thereafter, Roger Jones obtained the permission of an official of the development to operate the go-cart on a dirt lot within the subdivision.
On December 15, 1985, the Jones' 12-year-old son, Kirk, permitted 11-year-old Matthew Parry to operate the go-cart. Parry, with another youngster as a passenger, drove the go-cart on the dirt lot and then onto the adjoining street. While operating the vehicle a considerable distance from the Jones' residence, Matthew struck a portion of the curb, causing the go-cart to vault through the air and come to rest in a water retention basin some 17 feet from the curb. The basin was constructed as part of the common area of the development. Matthew Parry was rendered a paraplegic as a result of the accident.
On February 17, 1984, the Declaration of Covenants, Conditions, and Restrictions (CC & R's) for Heatherbrook were recorded in Maricopa County. Article I, Section 6, of the CC & R's provides that the common area of the subdivision is "owned by [Heatherbrook Association] for the common use and enjoyment of the Owners...."[1] Article I, Section 20, of the CC & R's provides that residential units of the subdivision "shall in no event include all or any part of the common area."[2] Article VII, Section 1, of the CC & R's provides that the Association "shall be responsible for the exclusive management and control of the Common Area and shall keep it in good, clean, attractive and sanitary condition, order and repair, pursuant to the terms and conditions hereof."
When the Jones family purchased their residence in the Heatherbrook subdivision, a joint tenancy deed was filed with the County Recorder on January 2, 1985. That deed reflected that the property was purchased subject to all CC & R's of record.
The homeowners policy purchased by the Jones family from USAA defined the area insured as follows:
4. "[I]nsured location" means:
a. the residence premises;
b. the part of any other premises, other structures, and grounds, used by *85 you as a residence and which is shown in the Declarations or which is acquired by you during the policy period for your use as a residence;
c. any premises used by you in connection with the premises included in 4a or 4b;
d. any part of a premises not owned by any insured but where any insured is temporarily residing;
e. vacant land owned by or rented to any insured other than farm land;
f. land owned by or rented to any insured on which a one or two family dwelling is being constructed as a residence for any insured;
g. individual or family cemetery plots or burial vaults of any insured;
h. any part of a premises occasionally rented to any insured for other than business purposes. (Emphasis added.)
"Residence premises" was defined in the homeowners policy as "the one or two family dwelling, other structures, and grounds or that part of any other building where you reside and which is shown as the `residence premises' in the Declarations."
The homeowners policy also contained a motor vehicle exclusion. That exclusion provided:
Section II  Exclusions
1. Coverage E  Personal Liability and Coverage F  Medical Payments to Others do not apply to bodily injury or property damage:
* * * * * *
e. arising out of the ownership, maintenance, use, loading or unloading of:
* * * * * *
(2) a motor vehicle owned or operated by, or rented or loaned to any insured; ....
The homeowners policy defines motor vehicle as follows:
5. "[M]otor vehicle" means:
* * * * * *
c. a motorized golf cart, snowmobile, or other motorized land vehicle owned by any insured and designed for recreational use off public roads, while off an insured location. A motorized golf cart while used for golfing purposes is not a motor vehicle;.... (Emphasis added.)
ISSUE ON APPEAL
On appeal, Matthew Parry and his parents argue that the trial court should not have granted USAA's cross-motion for summary judgment, because the water retention basin was a common area of the subdivision covered by USAA's homeowners policy.
SUMMARY JUDGMENT WAS APPROPRIATE
In reviewing the granting of summary judgment, this court must view the evidence in the light most favorable to the party opposing the motion and draw all inferences fairly arising from the evidence in favor of that opposing party. Auto-Owners Ins. Co. v. Moore, 156 Ariz. 184, 185, 750 P.2d 1387, 1388 (App. 1988); Brown Wholesale Electric Co. v. Safeco Ins. Co., 135 Ariz. 154, 157, 659 P.2d 1299, 1302 (App. 1982). Summary judgment is appropriate where the record shows that there is no genuine dispute as to any material facts, that only one inference can be drawn from those undisputed material facts, and that based upon the undisputed material facts, the moving party is entitled to judgment as a matter of law. Auto-Owners Ins. Co., supra; Giovanelli v. First Federal Savings and Loan Ass'n of Phoenix, 120 Ariz. 577, 581, 587 P.2d 763, 767 (App. 1978). If there are material issues of fact upon which reasonable people could reach different conclusions, summary judgment is not appropriate. Gulf Ins. Co. v. Grisham, 126 Ariz. 123, 124, 613 P.2d 283, 284 (1980).
Appellants do not dispute the fact that the common areas of the subdivision are owned and under the control of the subdivision and not the individual homeowners. They argue, however, that these common areas are used by the homeowners "in connection with" the residential premises and are therefore within the homeowner's policy issued by USAA. In an affidavit signed by Roger Jones, he states:

*86 The water retention area had a two-fold purpose. First, to collect and retain run off waters during the rainy season. Second, when not in use for that purpose, it was a portion of the recreational area that could be used and enjoyed by all of the Heatherbrook Development Association members and their guests.
We need not determine the precise reach of the provision covering "any premises used by you in connection with" the insured's residence. Given the fact that the basin was owned by the Association, designed for run-off collection purposes, and located at a distance from the Jones' residence, the water basin cannot be construed as a "premise" used "in connection with" the Jones' residence within the meaning of this provision.
Additionally, the definition of motor vehicle in the exclusions provision of the insurance policy certainly encompasses the go-cart owned by the Jones family. Coverage is therefore excluded where such a vehicle is used "off an insured location." Because we conclude that the water retention basin was not an "insured location," no coverage was afforded by the policy and summary judgment was appropriate.
We affirm.
LIVERMORE, P.J., and FERNANDEZ, J., concur.
NOTES
[*] Gordon, C.J., of the Supreme Court, did not participate in the determination of this matter.
[1] Article I, Section 6, of the CC & R's provides:

"Common Area" shall mean all real property (including the improvements thereto), owned by the Association for the common use and enjoyment of the Owners (including, but not limited to Tract AA, which is to be transferred to the Association as more particularly provided in Article VII, Section 3 below). The Common Area to be owned by the Association at the time of the conveyance of the first Residential Unit to a retail purchaser shall be (a) Tract AA, and (b) the property described on Exhibit "B" attached hereto and incorporated herein by reference.
[2] Article I, Section 20, of the CC & R's defines residential unit as follows:

"Residential Unit" shall mean any portion of the Property intended for use and occupancy as a residence by a single household and shall, unless otherwise specified, include within its meaning (by way of illustration, but not limitation) single family detached dwellings, condominium units, apartment units, and patio or zero lot line homes, but shall in no event include all or any part of the Common Area.